UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DAY,<br><br>                    Plaintiff,<br>vs.<br><br>JEFFREY L. SLOTHOWER and<br>BATTERY PRIVATE, INC.<br><br>                    Defendants. | Index No: 1:21-cv-1188 |

## PLAINTIFF MICHAEL DAY'S COMPLAINT

Plaintiff Michael Day ("Day" or "Plaintiff") alleges for his Complaint against Defendants Jeffrey L. Slothower ("Slothower") and Battery Private, Inc. ("Battery Private") (collectively, the "Defendants") as follows:

### INTRODUCTION

1.  This action arises out of a Slothower's and Battery Private's fraud and their conversion of Day's funds. After leaving a national securities brokerage firm, Slothower repeatedly solicited Day to invest money with his investment company called Battery Private. Slothower represented to Day that he would use Day's funds for Battery Private's cash capital reserves and that Day's money would be returned to Day upon demand. In exchange, Slothower agreed to pay Day quarterly interest payments. Based on Slothower's representations, Day transferred a total of approximately $643,000 to Battery Private.

2.  When Day requested Slothower to return his money, however, Slothower refused. Instead, Slothower represented that Day's funds were held in illiquid assets that needed to be sold. On information and belief, Slothower's representations to Day that Slothower would use the funds as Battery Private's cash reserves was false. Similarly,

1

Slothower's representations to Day that his funds were in illiquid assets was false. On information and belief, Slothower instead used Day's money to, inter alia, pay personal or business debts and support his lavish lifestyle as a Hampton socialite.

3. Day brings this action to recover his money from Slothower and Battery Private. Day also seeks punitive damages and recovery of his attorney's fees against Slothower based on Slothower's fraudulent business practices under New York General Business Law §349 (Deceptive acts and practices law).

## PARTIES

4. Plaintiff Day is, and at all times relevant to this complaint was, an individual who resides in and is a citizen of California.

5. Plaintiff is informed and believes and thereon alleges that Defendant Slothower is, and at all times relevant to this complaint was, an individual who resides in and is a citizen of New York State.

6. Plaintiff is informed and believes and thereon alleges that Defendant Battery Private is, and at all times relevant to this complaint was, a corporation organized and existing under the laws of New York with its principal place of business at 17 State Street, 40th Floor, New York, New York 10004. Battery was a registered investment advisor with United States Securities & Exchange Commission ("SEC") from about August 2016 until its registration was terminated on or about November 2, 2017.

7. On information and belief, Battery Private is owned and controlled by Defendant Slothower. Battery Private is described on its website, as "a principal investor in different opportunistic asset classes including private companies, startups, art, collectibles, film and real estate."

## JURISDICTION

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. Plaintiff Day is a citizen of California and Defendants Slothower and Battery Private are citizens of New

York.

## VENUE

9.      Venue is proper under 28 USC § 1391(b)(1) because all Defendants are residents of New York and Defendant Battery Private resides in New York County. Venue is proper under 28 USC § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's action, including the location of where the parties entered into the subject contract, occurred in New York County.

## GENERAL ALLEGATIONS

### Cash Account Contract

10.      On January 23, 2017, Day and Defendant Battery Private entered into a contract whereby Day agreed to provide Slothower with funds that would be used solely as capital reserves for Battery Private. In exchange, Battery Private agreed to pay Day quarterly interest payments ("Cash Account Contract"). Attached as Exhibit A is a true and correct copy of the terms of the Cash Account Contract.

11.      The Cash Account Contract states that Battery Private will pay Day 8% simple interest payable at 2% per quarter on cash sent and held as capital reserves of Battery Private, Inc. beginning January 1, 2017 to January 1, 2018." The Cash Account Contract provided that "[t]he cash can be called at any time…"

### Day's Transfer of Funds

12.      On January 23, 2017, Slothower instructed Day to "[p]lease instruct Oppenheimer and Morgan Stanley to wire to: Battery Private, Inc., Acct:…, Routing:…, Santander Bank, 336 Broadway New York, NY 10013.

13.      In response to Slothower's request, on January 25, 2017, Day initiated two wires from his account held at Oppenheimer & Co. Inc., one for $246,727.43 and one for $150,000, for a total amount of $396,727.43, to an account held at Santander Bank located at 36 Broadway, New York, NY 10013, titled in the name of Battery Private Inc. On information and belief, Battery Private acknowledged receipt of the wire transfer.

Thereafter, Slothower sent statements on Battery Private letterhead to Day acknowledging the balance of Day's funds.

14. Day transferred an additional $150,000 to Battery Private, bringing the total amount to $546,727.94.

15. On October 1, 2017, Day transferred $12,000.00 to Battery Private.

16. On July 18, 2018, Day transferred $84,000.00 to Battery Private.

17. In total, Day transferred to Battery Private $642,727.94. Slothower sent Day statements on Battery Private letterhead acknowledging that Battery Private was holding Day's funds totaling $642,727.94.

**Battery Private's Quarterly Interest Payments**

18. Commencing on or about February 2017, Battery Private paid Day quarterly interest payments calculated at the rate of 8% per annum and totaling $12,854.55.

19. As of the third quarter 2018, however, Battery Private stopped paying Day the contractual quarterly interest payments. Nevertheless, Battery Private continued to send Day account statements acknowledging the quarterly accrued interest payments as due, accrued, and owed.

20. On April 2, 2018, Slothower emailed Day stating, "First quarter interest will be sent this week in two checks." Day never received any checks.

21. On November 7, 2018, Day emailed Slothower stating: "Neither Cindy [nor] I received our Quarterly distribution checks for Q3 2018. Can you please update us?"

22. On November 7, 2018, Slothower responded stating: "Ok I went through the process of stopping those and I will have them reissued. I will call/email when they read "sent". (These others read sent so not sure why they weren't received). Separately, I'd like to begin planning to have all principal returned after Q4 is concluded – as long as there is no strong opposition to that. It's looking like the same interest couldn't be repeated in 2019, though I'm sure though I'm not sure yet. Please both let me know if returning causes any issues with either of you." This statement was false, and known by Slothower to be false,

and intended by Slothower to make Day believe that he would soon receive his funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

23. On November 30, 2018, Day emailed Slothower and requested that Slothower and Battery Private return all principal and accrued interest to Day.

24. On December 17, 2018, Slothower emailed Day stating, "everything will be free after the 4th quarter, principal and all accrued interest for both you and Cynthia." This statement was false, and known by Slothower to be false, and intended by Slothower to make Day believe that he would soon receive his funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

25. On February 5, 2019, Slothower emailed Day stating "Thank you, I have all the instructions and all funds will be back out shortly. I'm working on it nonstop to get all cleared and settled, as I'm also anxious to close this out. Interest is accrued." Slothower's statements that "all funds will be back out shortly" and "I'm working on it nonstop to get all cleared and settled" were false, and known by Slothower to be false, and intended by Slothower to make Day believe that he would soon receive the funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

26. On February 28, 2019, Slothower emailed Day stating "The wires won't take much longer to be released out. Sorry for the delay. Everything is backed by a very large amount of assets and getting the liquidation to cash to be able to wire has just been really slow procedurally. I'm expecting it imminently…" Slothower's statements that "The wires won't take much longer to be released out" and "Everything is backed by a very large amount of assets" were false, and known by Slothower to be false, and intended by Slothower to make Day believe that he would soon receive the funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

27. In addition, Slothower's statement to Day on February 28, 2019, that "Everything is backed by a very large amount of assets and getting the liquidation to cash to be able to wire

has just been really slow procedurally" constitutes Slothower's admission that he had misappropriated the funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

28. On April 29, 2019, Slothower emailed Day stating: "Your note is well protected by my company assets which is what I was relaying in the call – which are in the process of being liquidated, as planned all along, which will pay off the note. In the same agreement I also mentioned to please "allow a full quarters notice." That process has been delayed I admit but will be finished shortly so I am sorry for the delay. I don't anticipate it will be much longer at all. You and Cynthia are my priority in first out." These statements were false, and known by Slothower to be false, and intended by Slothower to make Day believe that he would soon receive the funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

29. On July 24, 2019, Slothower emailed Day stating "Status is I'm hoping to have an outgoing to you by the end of next week. I'm close to getting the return of cash I've been expecting for a while. I will send an updated balance sheet tonight." Slothower's statements that "I'm close to getting the return of cash" and "I will send an updated balance sheet tonight" were false, and known by Slothower to be false, and intended by Slothower to make Day believe that he would soon receive the funds that Day provided to Slothower to hold as cash reserves for his company Battery Private as set forth in the Cash Account Contract.

30. At the end of 2019, Slothower sent Day a statement acknowledging Day's $642,727.94 principal balance with Battery Private and accrued interest totaling $77,127.30, representing a total amount owed of $719,855.24. (Attached as Exhibit B is a true and correct copy of Battery Private's 2019 account statement for Day.)

31. On January 15, 2020, Day sent Slothower a letter demanding return of his money and accrued interest totaling $719,855.24.

32. In or about July 2020, Slothower sent Day a statement acknowledging Day's $642,727.94 principal balance with Battery Private and accrued interest totaling $102,836.40,

6

representing a total amount owed of $745,564.34. (Attached as Exhibit C is a true and correct copy of Battery Private's 2019 account statement for Day.)

33. To date, Slothower has not returned Day's principal balance or accrued interest and owes Day from this account as of October 1, 2020, $758,418.89.

34. On information and belief, Slothower intentionally, willfully, and criminally stole Plaintiff's funds and used these funds to pay for his own personal use to fund a lavish lifestyle in and around the Hamptons, while at the same time telling Plaintiff his funds were safe. With conscious and deliberate disregard of the interests of Plaintiff, Slothower intended that his scheme defraud Plaintiff out of his money for Slothower's own personal use.

35. On information and belief, Plaintiff alleges that Slothower's conduct with respect to Plaintiff's funds constitutes a pattern and practice that Slothower engaged in with a variety of individuals, including, but not limited to, Plaintiff's ex-wife, whom he defrauded out of several hundreds of thousands of dollars in investment funds for his own personal use, as well as Michael Bryan (see *Bryan V. Slothower*, New York County, Docket No. 651014), who is currently involved in litigation against Mr. Slothower, whereby Slothower defrauded and converted Mr. Bryan's funds of over a million dollars for his own use to fund his lifestyle in the Hamptons.

36. On information and belief, Slothower and Battery Private acted willfully and maliciously when he failed and refused to return Plaintiff's funds.

37. Upon information and belief, Slothower is an alter ego of Battery Private, which is owned and controlled by Slothower, and through Slothower's domination and control, was able to easily perpetrate the fraud against Plaintiff.

## COUNT ONE: BREACH OF CONTRACT

38. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

39. Day and Battery Private entered into the Cash Account Contract, a valid and binding contract.

40. Day performed any and all conditions precedent and obligations for which he is seeking payment under the Cash Account Contract.

41. Battery Private is indebted to Day for the money he provided to Battery Private under the Cash Account Contract, in the principal amount of $642,727.94 and accrued interest totaling $115,690.95, for a total amount due by Defendants to Day under the Cash Account Contract of $758,418.89.

42. Day has demanded return of his funds; Slothower and Battery Private have refused to return Day's funds.

43. Day has been damaged by Battery Private's non-payment.

## COUNT TWO: BREACH OF FIDUCIARY DUTY

44. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

45. As described herein, Defendants, as a registered investment advisor and registered representative, assumed the obligation by law to use at least ordinary care in the management of Plaintiff's assets and funds. Defendant had a duty, as a result of a special relationship, to give Day correct and accurate information.

46. At all times relevant, Plaintiff entrusted his affairs relating to his investments to Defendants, and reasonably relied upon Defendants to manage those affairs as a fiduciary, in good faith, and with due regard for Plaintiff's instructions, risk tolerance, objectives, goals, health and best interests.

47. As fiduciaries, Defendants were required and obligated to act in Plaintiff's best interests at all times, Defendants also owed Plaintiff an obligation of diligent and faithful service. Defendants owed Plaintiff duties of loyalty and care and was required to exercise their duties with the upmost good faith and integrity, and such skill and judgment as might reasonably be expected of fiduciaries.

48. Defendants breach those fiduciary duties to Plaintiff by, amongst other things, stealing his money and making false representations intending to deceive Day into thinking

that his funds were safe and held in cash. Defendants made these false representations knowing they were false.

49. Defendants made these false representations to Day with Defendants' intent that Day rely upon them and for Day to forego requesting that Defendants return of his funds. Day reasonably relied on Defendants' misrepresentations and based on them did not ask that Defendants return his funds.

50. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in an amount to be determined at haring, but in no event less than $2,275,257.00.

## COUNT THREE: CONVERSION

51. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

52. As Plaintiff's financial advisor, Defendants had a fiduciary duty of care, loyalty, and good faith to Plaintiff.

53. Plaintiff at all times pertinent had and has a possessory right and interest in his assets and funds. Plaintiff's possessory right and interest was one of sole and exclusive ownership.

54. By stealing Plaintiff's funds and using it to pay personal and business debts, Defendants exercised dominion over Plaintiff's property and interfered with Plaintiff's right to sole and exclusive ownership thereof.

55. Defendants' exercise of dominion and interference with Plaintiff's property rights is and was in derogation of the Plaintiff's rights.

56. As a result, of Defendants' conversion of Plaintiff's funds, Plaintiff has been damaged in the amount of funds held and accrued interest, totaling $758,418.89.

57. Moreover, because Defendants conduct was willful, wanton, deliberate, reckless, and malicious, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but in no event less than $2,275,257.00.

## COUNT FOUR: FRAUD

58.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

59.     Defendants made untrue statements of material fact or omitted to state materials facts necessary in order to make the statements not misleading.

60.     Defendants knew of or recklessly ignored the falsity of their untrue statements or omissions of material fact

61.     Defendants knew of or recklessly ignored the falsity of their untrue statements or omissions of material fact.

62.     Defendants intended that Plaintiff rely on the misrepresentations or omissions of material fact.

63.     Plaintiff was ignorant to the falsity of the misrepresentations and omissions of material fact and Plaintiff reasonably and justifiably relied upon those misrepresentations and omissions to his detriment.

64.     By reason of the foregoing, Defendants committed fraud against Plaintiff.

65.     As a direct and proximate consequence of Defendants misrepresentations or omissions, Plaintiffs suffered damages in an amount to be determined at trial, but not less than $758,418.89.

66.     Moreover, because Defendants conduct was willful, wanton, deliberate, reckless, and malicious, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but in no event less than $2,275,257.00.

WHEREFORE, Plaintiff demands judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against defendants for the following:

1.     An award of monetary damages in the amount of $758,418.89;

2.     Pre-Judgment Interest under CPLR § 5004;

3.     For punitive damages; and

4.     Such further relief as this Court may deem just and equitable.

DATED: February 9, 2021

                                              Respectfully submitted,

                               Scoolidge Peters Russotti & Fox, LLP

                               By: */s/ Peter Scoolidge*
                               2 Park Avenue - 20th Floor
                               New York, NY 10016
                               Tel: (212) 729-7708